### In re CAJUN ELECTRIC POWER COOPERATIVE, INC., Debtor.

**Bankruptcy No. 94–11474.**

United States Bankruptcy Court, M.D. Louisiana.

Aug. 26, 1999.

Gerald M. Amero, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, ME, George J. Marcus, Marcus, Grygiel & Clegg, P.A., Portland, ME, Joseph E. Friend, Breazeale, Sachse & Wilson, L.L.P., New Orleans, LA, Stephen F. Chiccarelli, Michael A. Crawford, Breazeale, Sachse & Wilson, L.L.P., Baton Rouge, LA, for Official Committee of Unsecured Creditors of Cajun Electric Power Cooperative, Inc.

Matt Farley, Preaus, Roddy & Krebs, New Orleans, LA, Michael A. Rosenthal, Gibson, Dunn & Crutcher, Dallas, TX, for NRG Energy, Inc., Southern Energy–Cajun, Inc., Ziegler Coal Holding Company, Louisiana Generating, L.L.C.

Henry Kaim, Sheinfeld, Maley & Kay, P.C., Houston, TX, Patricia Baron Tomasco, Sheinfeld, Maley & Kay, P.C., Austin, TX, Bobby S. Gilliam, Wilkinson, Camody & Gilliam, Shreveport, LA., for Southwestern Electric Power Company.

Frances M. Toole, Brendan Collins, United States Department of Justice–Civil Division, Commercial Litigation Branch, Washington, DC, John J. Gaupp, James Thompson, Office of the U.S. Attorney, Baton Rouge, LA., for United States of America, Rural Utilities Service.

Michael R. Fontham, Noel J. Darce, Karen H. Freese, David K. Hall, Stone, Pigman, Walther, Wittman & Hutchinson, L.L.P., New Orleans, LA., Peter J. Lucas, Doherty Rumble & Butler, P.C., Denver, CO, Edna Ayliffe Latchem, Baton Rouge, LA, for The Louisiana Public Service Commission.

Ronald M. Martin, Holland & Hart, Colorado Springs, CO, *Edna Ayliffe Latchem, for Triton Coal Company.

Patrick R. Vance, Laura Leigh Blackston, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., New Orleans, LA., Michael T. Perry, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., Baton Rouge, LA., for American Commercial Terminals, A Division of American Commercial Marine Services Company.

James R. Lackie, Mark D. Mese, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P., Baton Rouge, LA., for The Burlington Northern and Santa Fe Railway.

Lon A. Jenkins, Mark Dykes, Peggy Hunt, Ronald L. Rencher, James F.

Brownlee, LeBoeuf, Lamb, Greene & McRae, L.L.P., Salt Lake City, UT, David S. Rubin, Kantrow, Spaht, Weaver & Blitzer (APLC), Baton Rouge, LA., Mark Davidson, LeBoeuf, Lamb, Greene & McRae, L.L.P., Denver, CO, John C. Parks, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C., Denver, CO, for Ralph R. Mabey, Chapter 11 trustee of Cajun Electric Power Cooperative, Inc.

Tom F. Phillips, Fredrick R. Tulley, Kathleen C. Mason, Taylor, Porter, Brooks & Phillips, L.L.P., Baton Rouge, LA., for Entergy Gulf States, Inc. (formerly Gulf States Utilities Company).

Carl H. Hanchey, Jones, Tete, Nolen, Hanchey, Swift & Spears, L.L.P., Lake Charles, LA., for Beauregard Electric Cooperative, Inc.

Patrick E. Henry, Sharp, Henry, Cerniglia, Colvin & Weaver, L.L.C., Homer, LA., for Claiborne Electric Cooperative, Inc.

V. Russell Purvis, Smith, Taliaferro, Seibert & Purvis, Jonesville, LA., for Concordia Electric Cooperative, Inc.

John M. Sharp, Sharp, Henry, Cerniglia, Colvin & Weaver, L.L.C., Baton Rouge, LA., for Dixie Electric Membership Corporation.

William N. Knight, Jennings, LA., for Jefferson Davis Electric Cooperative, Inc.

Rudolph E. McIntyre, Sr., McIntyre, McIntyre & McIntyre, Winnsboro, LA., for Northeast Louisiana Power Cooperative, Inc.

James B. Supple, Biggs, Trowbridge, Supple & Cremaldi, Franklin, LA., Berry D. Spears, Winstead, Sechrest & Minick, P.C., Houston, TX, for Pointe Coupee Electric Membership Corporation.

James M. Funderburk, Duval, Funderburk, Sundbery, Lovell, Reeves & Watkins, Houma, LA, for South Louisiana Electric Cooperative Association.

James J. Davidson, III, Mark Andrus, Davidson, Meaux, Sonnier, McElligott & Swift, Lafayette, LA., John W. Hutchison,

Voorhies & Labbe', A.P.L.C., Lafayette, LA., for Southwest Louisiana Electric Membership Corporation.

Henry Cole Gahagan, Jr., Gahagan & Conlay, Natchitoches, LA, for Valley Electric Membership Corporation.

Clint Pierson, Charles M. Hughes, Jr., Talley, Anthony, Hughes & Knight, Mandeville, LA, for Washington–St.Tammany Electric Cooperative, Inc.

Melanie R. Cohen, Benjamin Schwartz, Christopher Combest, Altheimer & Gray, Chicago, IL, *John M. Sharp (DEMCO), for The Committee of Certain Members of Cajun Electric Power Cooperative, Inc.

Janice Taylor, Carolyn S. Cole, Office of the U.S. Trustee, New Orleans, LA., for United States Trustee.

Kell A. McInnis, III, Baton Rouge, LA., for Cajun Electric Power Cooperative, Inc.

### ORDER APPROVING SETTLEMENT AGREEMENT RELATIVE TO CONFIRMATION OF CREDITORS' PLAN

FRANK J. POLOZOLA, Chief Judge.

This matter having come on for hearing on this 26th day of August, 1999, to consider approval of the plan-related settlement reached by and among the parties to this chapter 11 case, and the Court having heard argument of counsel and considered such other matters as were appropriate under the circumstances, the Court finds:

1. On August 18, 1999, this Court entered an order directing all parties presently contesting confirmation of the competing plans presently under advisement before the Bankruptcy Court to appear and participate in extensive, good faith settlement negotiations. Notice of such order was properly served.

2. In response to this Court's August 18, 1999, Order, all parties appeared and participated in extensive, good faith, settlement negotiations on August 25, 1999. With the consent of the parties, the Court

and The Honorable Steven A. Felsenthal, United States Bankruptcy Judge for the Northern District of Texas, participated in and presided over such negotiations.

3. As a result of the negotiations, the parties have reached a settlement that resolves the protracted litigation in which the parties have been engaged relative to the competing plans of reorganization and various other pending matters.

4. Adequate notice of the settlement and of this hearing to approve the settlement has been given to all interested parties.

5. The settlement was placed on the record late in the evening on August 25, 1999, and all parties expressly consented to such settlement.

6. The settlement has been documented in that certain Settlement Agreement Relative to Confirmation of Creditors' Plan in Chapter 11 Case of Cajun Electric Power Cooperative, Inc. (the "Settlement Agreement"), a copy of which is attached hereto as Exhibit A and made a part hereof.

■ 7. The Settlement Agreement is in the best interest of Cajun, its creditors and its member cooperatives as it facilitates confirmation of a consensual plan of reorganization, ends protracted and expensive litigation in which the Cajun estate and its stakeholders have been involved, assures a prompt and satisfactory distribution to Cajun's creditors, and enables Louisiana ratepayers to receive substantial benefits in the form of rate relief and refunds.

■ 8. A critical component of the Settlement Agreement is the granting of an injunction as set forth in paragraph 10 of the Settlement Agreement. Absent the injunction, the parties would be unwilling to enter the Settlement Agreement and Cajun, its creditors and its member cooperatives would not receive the benefits of the Settlement Agreement and, thus, would be irreparably harmed. Accordingly, issuance of the requested injunction is appropriate.

NOW, THEREFORE, IT IS ORDERED:

1. The reference of confirmation matters to the Bankruptcy Court is withdrawn for the limited purpose of enabling this Court to consider whether to approve the Settlement Agreement. The decision whether to confirm the Creditors' Plan, as modified by the Settlement Agreement, remains referred to the Bankruptcy Court, which is requested to issue its confirmation ruling and a confirmation order as soon as possible.

2. The Settlement Agreement is approved and the Trustee and the Official Committee of Unsecured Creditors are authorized and directed to execute the Settlement Agreement and to perform in accordance with its provisions. Further, the Trustee is authorized and directed to execute the LPSC Term Sheet (as defined in the Settlement Agreement) and to perform in accordance with its provisions.

3. The District Court will, on the effective date of the Creditors' Plan, enter an order dismissing with prejudice Adv. Proceeding No. 96–1052 and recommending to the Bankruptcy Court that the decision in that Adversary Proceeding be vacated prior to the effectiveness of such dismissal. Pending the occurrence of the effective date of the Creditors' Plan, further proceedings relative to this Adversary Proceeding shall be stayed. The District Court will, on the effective date of the Creditors' Plan, enter an order dismissing with prejudice the disqualification motions with prejudice. Pending the occurrence of the effective date of the Creditors' Plan, further proceedings relative to the disqualification motions shall be stayed.

4. All persons shall be and hereby are enjoined and permanently restrained from the prosecution of any claims against a Party (as defined in the Settlement Agreement) or its representatives based on such

Party's agreement to settle on the terms and conditions set forth herein.

5. No further notice of the Settlement Agreement or the injunction issued herein shall be required.

6. This Court retains jurisdiction to enforce the provisions of this Settlement Agreement. Dated this 26th day of August, 1999 at Baton Rouge, Louisiana.

## APPENDIX

### SETTLEMENT AGREEMENT RELATIVE TO CONFIRMATION OF CREDITORS' PLAN IN CHAPTER 11 CASE OF CAJUN ELECTRIC POWER COOPERATIVE, INC.

This Settlement Agreement is made and entered into this 26th day of August, 1999, by and among the parties that are signatories hereto (the "Parties").

### RECITALS

WHEREAS, Cajun Electric Power Cooperative, Inc. ("Cajun") is a debtor in a case under chapter 11 of the Bankruptcy Code pending in the United States District Court for the Middle District of Louisiana (the "District Court"); and

WHEREAS, Ralph R. Mabey (the "Trustee") is the duly appointed and qualified chapter 11 trustee of the estate of Cajun; and

WHEREAS, two competing plans of reorganization have been filed relative to the chapter 11 reorganization of Cajun, one plan co-proposed by Southwestern Electric Power Company, the members of the CCM and Washington St. Tammany (the "SWEPCO Plan") and the other plan co-proposed by Louisiana Generating LLC ("La.Gen"), SLEMCO, Pointe Coupee, Concordia and the Official Committee of Unsecured Creditors (the "Creditors' Plan" and, collectively with the SWEPCO Plan, the "Plans"); and

WHEREAS, matters related to confirmation of the Plans have been referred to the United States Bankruptcy Court for the Middle District of Louisiana (the "Bankruptcy Court"); and

WHEREAS, the Parties, including without limitation Cajun's creditors and Cajun's member cooperatives (the "Members"),[1] have been engaged in protracted litigation over the confirmation of the Plans; and

WHEREAS, on or about August 18, 1999, District Judge Frank Polozola entered an order (the "Settlement Order") *sua sponte* directing the Parties, by and through their counsel and business representatives authorized and empowered to settle issues relative to confirmation of the Plans, to appear before him on August 25, 1999, to discuss settlement of the issues relative to confirmation of the Plans; and

WHEREAS, the Parties, on August 25, 1999, participated in good faith in a lengthy settlement conference with District Judge Frank Polozola and Bankruptcy Judge Steven A. Felsenthal, acting pursuant to a request of District Judge Polozola, to resolve and settle their disagreements relative to the Plans (the "Settlement Conference"); and

WHEREAS, pursuant to the directive of the Settlement Order and in accordance with Rule 16 of the Federal Rules of Civil Procedure, the District Court ordered the Commissioners of the LPSC to appear at the Settlement Conference and four of such Commissioners did appear and participate in the Settlement Conference. Because this appearance was ordered pursuant to the Settlement Order and in accordance with Rule 16 of the Federal Rules of Civil Procedure, the Louisiana Open Meetings Law is not implicated, however, at no time did more than two of such Commissioners meet and confer and, therefore, act in any manner that would violate the Louisiana Open Meetings Law; and

---

1. The defined term "Members" includes all member cooperatives of Cajun.

WHEREAS, the Parties have agreed to resolve and settle their disagreements relative to the Plans on the terms and conditions set forth herein.

## AGREEMENTS

NOW, THEREFORE, in consideration of the foregoing recitals and of other good and valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged and accepted, the Parties hereby agree as follows:

1. The members supporting the SWEPCO Plan and the CCM withdraw their support of the SWEPCO Plan and withdraw as co-proponents of the SWEPCO Plan.

2. Based on the withdrawal of the Members as co-proponents of the SWEPCO Plan, SWEPCO withdraws the SWEPCO Plan with prejudice. In full and final satisfaction of the claims of SWEPCO, if any, against the Cajun estate, SWEPCO shall be entitled to receive expense reimbursement, payable from the estate as an administrative expense, in the amount of $7.5 million; such payment shall be made as soon as practicable after confirmation of the Creditors' Plan. The Parties consent to such reimbursement which shall be paid without the need for any further Court approval.

3. The Creditors' Plan, the Asset Purchase Agreement between the Trustee and La. Gen (the "Asset Purchase Agreement") and the power purchase agreements referenced therein shall be amended as may be required to implement the following modifications:

a. The option of the Members to elect to receive power from La. Gen under the version of the SWEPCO PPA filed with the Bankruptcy Court at the commencement of the continued confirmation hearings in June, 1999 shall be eliminated and replaced with an option to elect to receive power from La. Gen under the March, 1998 version of the SWEPCO PPA

filed with the Bankruptcy Court, provided that the energy charge under such 1998 version of the SWEPCO PPA shall be increased by one-half of one mill (.5 mill). The Creditors' Plan and Asset Purchase Agreement shall be clarified to confirm that, except as provided in the foregoing sentence, conforming, non-substantive changes only will be made to the 1998 SWEPCO PPA to enable La. Gen. to offer such PPA. These changes shall, among other things, address allocation issues and incorporate La. Gen's agreements for the transportation and supply of coal.

b. The time period in which Members shall elect which power option to take under the Creditors' Plan (and in which the Members shall make all of the subsidiary elections required by the power option so elected) shall be extended until 30 days after the LPSC makes its final determination with respect to the regulatory approvals requested by La. Gen.

c. $6 million of expense reimbursement shall be available to reimburse the expenses of SLEMCO, Pointe Coupee, Concordia and Teche as provided in the Memorandum of Understandings and $9 million of expense reimbursement shall be available to reimburse the expenses of the other Members. The $9 million shall be available to such Members whether or not they elect to execute a power purchase agreement with La. Gen. The $8 million of expense reimbursement presently available only to Members who elect the Member Long–Term PPA option shall be eliminated. Except as provided herein, the $9 million expense reimbursement described in this paragraph shall be allocated on a pro rata basis based on the amount of fees and expenses incurred. No expense reimbursement to any Member shall be paid except pursuant to further court approval. The expense reimbursement to the Members described in this paragraph shall be funded by La. Gen except that the final $1 million of expense reimbursement available to Members other than SLEMCO, Pointe Coupee Concordia and Teche shall be

funded from proceeds otherwise payable to the RUS under the Creditors' Plan.

    d.  The Purchase Price under the Asset Purchase Agreement shall be decreased from $1,045,500,000.50 to $1,026,000,000.

Except as provided herein, the Creditors' Plan and Asset Purchase Agreement, and the power purchase agreements referenced therein, shall remain unaffected.

    4.  The Parties shall withdraw their opposition, if any, to confirmation of the Creditors' Plan and stipulate and consent to the entry of an order confirming the Creditors' Plan as modified by this Settlement Agreement. All pending motions and/or objections challenging confirmation of the Creditors' Plan shall be withdrawn and/or dismissed.

    5.  By order entered on the Effective Date of the Creditors' Plan, the pending motions to disqualify the Trustee and his counsel, LeBoeuf Lamb, shall be dismissed with prejudice. The Parties reserve their right, however, to object to compensation related applications and motions filed by the Trustee and LeBoeuf Lamb. If the District Court and the Bankruptcy Court agree, the decision in Adversary Proceeding No. 96–1052 shall, by orders entered on the Effective Date of the Creditors' Plan, be vacated and the adversary proceeding and related appeals dismissed with prejudice. Pending the occurrence of such Effective Date, further proceedings relative to the disqualification motions and Adversary Proceeding No. 96–1052 shall be stayed.

    6.  The Parties consent to the provisions of the term sheet by and among the LPSC, the RUS and the Trustee, dated August 25, 1999 (the "LPSC Term Sheet"), a copy of which is attached hereto as Exhibit A. The provisions of the LPSC Term Sheet are incorporated by reference as if set forth fully herein. Although the LPSC and the RUS need to approve the LPSC Term Sheet and this Settlement Agreement, the representatives of the RUS and counsel for LPSC who were present at the Settlement Conference hereby confirm their support of the terms of the LPSC Term Sheet and this Settlement Agreement.

    7.  La. Gen shall seek LPSC approval within 30 days after entry of the confirmation order. The LPSC has agreed to expedite consideration of any such approval in accordance with the provisions of the LPSC Term Sheet. No Party will oppose regulatory approvals sought by La. Gen from the LPSC, FERC or any other regulatory agency except as specifically provided herein. SWEPCO and its affiliates may oppose a regulatory approval to the extent and only to the extent that such regulatory approval seeks to impose obligations or restrictions on SWEPCO or its affiliates (other than indirect consequences (such as increased competition) that arise as a result of the consummation of the Cajun acquisition). The Members retain the right to be heard on issues related to fuel review by the regulatory agencies. Parties would not be permitted to intervene in regulatory proceedings except for informational purposes and for the limited substantive purposes described in this paragraph. This paragraph only pertains to regulatory approvals sought by La. Gen in order to allow the Creditors' Plan to become effective and does not apply to subsequent regulatory approvals sought in the future.

    8.  In connection with the agreement of La. Gen to offer the March 1998 version of the SWEPCO PPA, the LPSC has agreed to pay to the RUS, from the portion of the segregated funds account that would otherwise be distributed to the LPSC pursuant to the LPSC Term Sheet, the sum of $6 million.

    9.  Immediately after confirmation of the Creditors' Plan, La. Gen, subject to appropriate confidentiality agreements, will disclose its fuel and transportation contracts to the LPSC's fuel consultant. The LPSC commits immediately to com-

mence an evaluation of such contracts and to take the other steps provided in the LPSC Term Sheet.

10. To the extent necessary, the District Court shall withdraw the reference of confirmation matters to the Bankruptcy Court for the limited purpose of considering whether to approve this Settlement Agreement. The District Court shall enter an order approving this Settlement Agreement and authorizing and directing the Trustee and, to the extent necessary, the Official Committee of Unsecured Creditors to execute this Settlement Agreement. The District Court shall enter an order, which may be the order approving the Settlement Agreement, enjoining and permanently restraining the prosecution of any claims against a Party or its representatives based on such Party's agreement to settle on the terms and conditions set forth herein. The foregoing orders shall provide that no further notice shall be required of such orders.

11. The District Court retains jurisdiction to enforce the provisions of this Settlement Agreement.

12. This Settlement Agreement may be executed in multiple counterparts, all of which taken together shall constitute the whole agreement.

13. Except as provided in paragraph 6 relative to the LPSC and the RUS, Each of the undersigned signatories represents that he or she has authority to agree to the provisions of this Settlement Agreement and to execute this Settlement Agreement on behalf of the Party indicated.

14. This Settlement Agreement embodies the written agreement of the Parties regarding the subject matter hereof, and supersedes any oral agreements or understandings relative to such subject matter.

15. This Settlement Agreement shall be governed and construed in accordance with the laws of the State of Louisiana applicable to agreements made and to be performed entirely within such state and, to the extent applicable, the Bankruptcy Code.

16. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective permitted assigns.

17. This Settlement Agreement may only be amended by a written instrument signed by the Parties, provided that, in the case of an amendment or waiver which only effects the rights or obligations of a limited number of Parties, such amendment or waiver shall be effective if the written instrument is signed by the affected Parties provided that notice of the proposed change is given in advance to all other Parties. No delay on the part of any Party in exercising any right, power or privilege hereunder, nor any single or partial exercise of any such right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other such right, power or privilege hereunder. The rights and remedies herein provided are cumulative and are not exclusive of any rights or remedies that any party may otherwise have at law or equity.

IN WITNESS WHEREOF, the Parties, by and through their undersigned authorized representatives, have executed this Settlement Agreement on this 26th day of August, 1999.

### EXHIBIT A TO SETTLEMENT AGREEMENT

### *LPSC/RUS/TRUSTEE TERM SHEET*

The Trustee of Cajun Electric Power Cooperative, Inc., the Louisiana Public Service Commission, and the Rural Utilities Service hereby agree to the following terms for resolving certain litigation in federal and state court and pending and potential rate cases before the LPSC involving Cajun, during the pendency of Cajun's Chapter 11 reorganization proceedings in bankruptcy court.

1. The parties agree that funds held by Cajun in its Segregated Funds Account (which shall include the interest rate escrow account, the Order No. U–17735 Subdocket A escrow account, and the segregated funds under the Cash Collateral Order) at the Effective Date of a confirmed Plan of Reorganization or the dismissal of the case (other than funds received in exchange for a sale of Cajun's assets) will be divided as follows: One-third of the funds will be transferred to the RUS and two-thirds of the funds will be refunded or otherwise devoted to the benefit of ratepayers as the LPSC directs. The Segregated Funds Account shall be deemed to include accounts receivable for the sale of electricity that are due on the Effective Date, although received at a later date. The funds in the Segregated Funds Account shall be distributed on the Effective Date unless received by Cajun after that date.

2. The rate decrease ordered by the Commission in Order No. U–17735 (Subdocket A) shall be implemented by Cajun on the first day of the first calendar month following approval of this term sheet by the LPSC and the Bankruptcy Court. The Trustee and RUS agree to request expedited approval of this term sheet by the Bankruptcy Court.

3. The LPSC will immediately stay the 1999 rate case in Docket U–17735 and will dismiss that case with prejudice if the Effective Date occurs on or before March 31, 2000. If, after March 31, 2000, the LPSC reasonably believes that the Effective Date will not occur by September 30, 2000, the LPSC may recommence the 1999 rate case, but will not issue a rate order in the 1999 rate case prior to September 30, 2000.

4. The parties will dismiss with prejudice all presently pending appeals and other proceedings in state and federal court relating to LPSC rate proceedings. In addition, the LPSC will dismiss with prejudice its Rule to Show Cause pending in docket no. U–17735 regarding the Trustee's and Cajun's fuel purchasing practices, and Adversary Proceeding No. 97–1025. The Trustee will dismiss with prejudice Adversary Proceeding No. 97–1009, and the LPSC will dismiss with prejudice its appeal from the preliminary injunction issued in that proceeding. The RUS will dismiss with prejudice its motion for adequate protection. The parties agree to jointly request that Appeal No. 98–31258 in the United States Court of Appeals for the Fifth Circuit be dismissed without the issuance of a mandate. The LPSC agrees not to oppose vacating the decision in Adversary Proceeding No. 96–1052 and dismissing the proceeding, assuming that the Trustee and plan proponents do not attempt to file or amend any plan of reorganization to impose new contract terms on Cajun's cooperatives without their agreement during the remainder of the proceeding.

5. The LPSC agrees not to institute a new rate proceeding for Cajun prior to October 1, 2000, and to do so only if the Effective Date has not occurred by that time. The LPSC will not institute a fuel review of Cajun's or the Trustee's prudence in acquiring fuel supplies, unless Cajun's delivered coal costs (excluding $SO_2$ allowances) for any consecutive three month period reported to the LPSC on a monthly basis increase by more than the sum of any percentage increase in the Producer Price Index for the same period plus four percent as compared to Cajun's average fuel costs in the 12 months ending August 31, 1999. If the LPSC institutes a fuel review as the result of an increase in fuel costs, it may only consider refunding the amount by which the fuel charges increased after September 1, 1999.

6. The LPSC will commit to use its best efforts to determine whether any confirmed plan comports with the public interest within 90 days of the filing of a request for approval of a confirmed plan. If the

LPSC approves the plan, it commits to support obtaining regulatory approval from other agencies.

7. Cajun shall retain the right to access the funds held in the Segregated Funds Account subject to approval by the Bankruptcy Court, the RUS, and the LPSC.

8. The Trustee will continue to abide by the Cash Collateral Order and amounts in excess of $35 million in the general funds account will be swept to the Segregated Funds Account prior to the distribution of funds to the LPSC and RUS.

9. If a plan has not become effective on or before September 1, 2000, and the LPSC or RUS reasonably believes that it will not become effective by December 31, 2000, the LPSC or RUS may require that 25 percent of the funds in the Segregated Funds Account on September 1, 2000 be distributed as soon as reasonably practicable and that 33 percent of the funds remaining in the account as of December 31, 2000 be distributed as soon as practicable after that date in the event the plan in fact has not been confirmed by December 31, 2000.